E-filing

1  **Leslie A. Baxter SBN 148195**
   lbaxter@randicklaw.com
2  **Patrick E. Guevara, SBN 202727**
   pguevara@randicklaw.com
3  **RANDICK O'DEA & TOOLIATOS, LLP**
   5000 Hopyard Road, Suite 400
4  Pleasanton, CA 94588
   Phone  (925) 460-3700
5  Fax      (925) 460-0969

6  Attorneys for Plaintiff AJMAL AKBAR dba COMMUNITY ONE
   FINANCIAL AND REAL ESTATE SERVICES

7

8              **UNITED STATES DISTRICT COURT**

9         **FOR THE DISTRICT OF NORTHERN CALIFORNIA**

10                    **OAKLAND DIVISION**

11

12  AJMAL AKBAR, an individual doing      Case No.:  **C07-04027**
    business as COMMUNITY ONE
13  FINANCIAL AND REAL ESTATE             **COMPLAINT FOR BREACH OF
    SERVICES,                             CONTRACT; BREACH OF THE
14                                        COVENANT OF GOOD FAITH AND FAIR
                                          DEALING; INJUNCTIVE RELIEF; AND
15                Plaintiff,              RESTITUTION**

16     vs.                                **[DEMAND FOR JURY TRIAL]**

17

18  LEXINGTON INSURANCE
    COMPANY, a Delaware corporation,
19
                  Defendant.
20

21

22      Plaintiff Ajmal Akbar, an individual doing business as Community One Financial and

23  Real Estate Services (hereinafter "Plaintiff"), by and through his undersigned counsel, hereby

24  alleges for his Complaint against Lexington Insurance Company (hereinafter "Defendant") on

25  personal knowledge as to his own actions and on information and belief as to the actions of

26  others as follows:

27

28                                                                              1

148034_2

## I.    THE PARTIES

1.    Plaintiff Ajmal Akbar is, and at all times relevant was, a citizen of the State of California residing in Contra Costa County, California.   Ajmal Akbar marketed, promoted, offered, and performed real estate sales and real estate financing services under the fictitious business name "Community One Financial and Real Estate Services."  Plaintiff's primary place of business is, and at all times relevant was, in the City of Fremont, Alameda County, California.

2.    Defendant Lexington Insurance Company is a Delaware corporation with its principal place of business in Boston, Massachusetts.  Defendant is an insurer that regularly issues and delivers liability insurance policies to residents of California.

## II.    NATURE OF ACTION

3.    This is an action against Defendant for its breach of an insurance contract by its failure to defend and indemnify Plaintiff in a third party lawsuit.  Defendant's handling and denial of Plaintiff's insurance claim is in breach of the implied covenant of good faith and fair dealing.  Moreover, Defendant has engaged in unfair claims practices in violation of California Business and Professions Code Section 17200 *et seq.*

## III.    JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity of citizenship).  The amount in question herein exceeds $75,000.

5.    Under 28 U.S.C. § 1391(a), venue is proper in the Northern District of California because a substantial part of the events giving rise to this action occurred here.

## IV.    INTRADISTRICT ASSIGNMENT

6.    Assignment to the San Francisco or Oakland Division of the Northern District of California is proper under Northern District Local Rule 3-2 because a substantial part of the events giving rise to this action occurred in Alameda County.

## V.    BACKGROUND ALLEGATIONS

7.    On or about September 7, 2005, in consideration of the payment of a premium of $20,778.00, Defendant, by its duly authorized agents, executed and delivered to Plaintiff in the

2

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH
AND FAIR DEALING; INJUNCTIVE RELIEF; AND RESTITUTION

148034_2

1  City of Fremont, Alameda County, California a Miscellaneous Professional Liability policy of

2  insurance, number 4685235, (hereinafter, the "Policy") by the terms of which Defendant

3  undertook and did insure Plaintiff against any and all liability resulting from Plaintiff's real

4  estate sales and real estate financing services (hereinafter, "Real Estate Services"). A true and

5  correct copy of the Policy is attached to this Complaint as <u>Exhibit A</u> and incorporated herein by

6  reference as though fully set forth herein.

7     8.     Pursuant to the Policy, Defendant agreed to pay, on behalf of Plaintiff, damages

8  that Plaintiff becomes legally obligated to pay because of claims arising out of or relating to

9  Plaintiff's Real Estate Services up to a maximum amount of $1 million. The Policy further

10 provided that Defendant has the "duty to defend any [c]laim made against [Plaintiff] seeking

11 [d]amages to which this insurance applies, even if any of the allegations of the [c]laim are

12 groundless, false or fraudulent."

13    9.     The Policy took effect on September 9, 2005 and was in full force and effect at all

14 times mentioned hereinafter. The Policy covers claims for acts, errors, or omissions by Plaintiff

15 that relate to his Real Estate Services and occurred on or after September 7, 2004.

16    10.    On or about June 28, 2006, Maricela Gutierrez (hereinafter, the "Third Party")

17 commenced an action against Plaintiff in the Superior Court of California, County of Alameda,

18 entitled *Gutierrez v. Akbar dba Community One Financial and Real Estate Services, et al.*, file

19 number RG06276752, (hereinafter, the "Third-party Action) for damages alleged to have been

20 suffered by the Third Party as a result of a home mortgage loan brokered by Plaintiff on or

21 around June 2005. A true and correct copy of the complaint filed by the Third Party is attached

22 to this Complaint as <u>Exhibit B</u> and incorporated herein by reference as though fully set forth

23 herein.

24    11.    After being served with the summons and complaint in the Third-party Action on

25 or around August 8, 2006, Plaintiff timely and duly tendered the defense of and indemnification

26 for the Third-party Action to Defendant (hereinafter, the "Claim"). On or around August 16,

27 2006, Defendant acknowledged receipt of Plaintiff's Claim.

28

3

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH
AND FAIR DEALING; INJUNCTIVE RELIEF; AND RESTITUTION

148034_2

12. Plaintiff's Claim was covered by the Policy.

13. Defendant failed and refused to conduct a prompt full and complete investigation of the facts and circumstances giving rise to the Third-party Action.

14. Defendant failed and refused to defend Plaintiff from the claims asserted in the Third-party Action.

15. Defendant failed and refused to indemnify Plaintiff from the claims asserted in the Third-party Action.

16. Defendant failed and refused to objectively evaluate Plaintiff's Claim.

17. Defendant failed and refused to conduct an investigation after Plaintiff provided Defendant with testimonial and documentary evidence obtained from discovery in the Third-party Action that supported coverage of the Third-party Action under the Policy.

18. Defendant failed and refused to advise Plaintiff in a timely manner regarding the status of his Claim.

19. Defendant failed and refused to promptly respond to communications from Plaintiff regarding the Policy and the status of his Claim.

20. Plaintiff has performed all of his obligations under the Policy, except for those obligations, which because of Defendant's breach of its obligations, Plaintiff has been excused or prevented from performing.

21. At a court-ordered mediation on June 13, 2007, Plaintiff entered into a reasonable settlement agreement to dispose of the Third-party Action. Pursuant to the settlement agreement, Plaintiff paid Third Party $50,000.00.

## VI.    FIRST CLAIM FOR RELIEF:
## BREACH OF CONTRACT

22. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23. Defendant breached its obligations under the Policy by doing each of the acts or

4

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; INJUNCTIVE RELIEF; AND RESTITUTION

148034_2

1    omissions alleged in paragraphs 13 through 19.

2        24.    As a direct and proximate result of Defendant's breach of the Policy, Plaintiff was

3    damaged, injured and prejudiced. Plaintiff was compelled to engage counsel to defend him in

4    the Third-party Action and to incur attorneys' fees in excess of $100,000 as well as litigation

5    costs and expenses in excess of $10,000. Plaintiff was also compelled to settle the Third Party's

6    claims, which Plaintiff vigorously denied and disputed.

7        25.    As a direct and proximate result of Defendant's breach of the Policy, Defendant is

8    estopped from relying upon any subsequently discovered information to support its rejection of

9    Plaintiff's Claim.

10       26.    As a direct and proximate result of Defendant's breach of the Policy, Defendant

11   waived any obligation on the part of Plaintiff to cooperate with Defendant in defense of the

12   Third-party Action.

13       27.    'Defendant's breach of the Policy and its denial of Plaintiff's Claim was vexatious

14   and without reasonable cause. Under California Insurance Code Section 1619, Plaintiff is

15   entitled to reasonable attorneys fees incurred in prosecuting this action in an amount to be proven

16   at trial.

17

## VII.    SECOND CLAIM FOR RELIEF:
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

20       28.    Plaintiff hereby realleges and incorporates by reference the allegations of

21   paragraphs 1 through 27 of this Complaint as if fully set forth herein.

22       29.    Defendant owes Plaintiff a duty of good faith and fair dealing in relation to the

23   Policy.

24       30.    Defendant breached its duty of good faith and fair dealing by doing each of the

25   acts or omissions alleged in paragraphs 13 through 19.

26       31.    Defendant unreasonably and narrowly interpreted the Policy in a manner

27   calculated to deny insurance benefits due to Plaintiff under the Policy.

28

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH
AND FAIR DEALING; INJUNCTIVE RELIEF; AND RESTITUTION
J48034_2

1    32.    Defendant unreasonably ignored evidence which supports coverage of the Third

2    Party Action.

3    33.    Defendant unreasonably refused to participate in and pay for Plaintiff's defense of

4    the Third-party Action.

5    34.    Defendant unreasonably refused to participate in and pay for the settlement of the

6    Third-party Action.

7    35.    Defendant's investigation, evaluation, and denial of the benefits claimed by

8    Plaintiff under the Policy was unreasonable and without proper cause.  Defendant knew that it

9    owed Plaintiff a duty to defend him yet refused to provide such a defense.

10    36.    As a direct and proximate result of Defendant's breach of its duty of good faith

11    and fair dealing, Plaintiff was damaged, injured and prejudiced.  Plaintiff is, therefore, entitled

12    to: (a) reasonable attorneys fees incurred by Plaintiff in obtaining the insurance benefits owed

13    under the Policy in an amount to be proven at trial; (b) an award of general damages as

14    compensation for his emotional distress in an amount to be proven at trial; (c) the attorneys' fees

15    and costs Plaintiff incurred in defending the Third-party Action; and (d) the amount paid to the

16    Third Party to settle her lawsuit against Plaintiff.

17    37.    In committing the acts described in this Complaint, Defendant acted in conscious

18    disregard of the rights of Plaintiff and was guilty of malice and oppression.  Defendant's conduct

19    warrants an assessment of punitive damages in an amount appropriate to punish Defendant and

20    deter other insurers from engaging in similar wrongful conduct.

21    **VIII.    THIRD CLAIM FOR RELIEF:**
**UNFAIR BUSINESS PRACTICES PURSUANT TO CALIFORNIA BUSINESS**

22    **AND PROFESSIONS CODE SECTION 17200 *ET SEQ.***

23    38.    Plaintiff hereby realleges and incorporates by reference the allegations of

24    paragraphs 1 through 37 of this Complaint as if fully set forth herein.

25    39.    Defendant has engaged and continues to engage in unlawful claims practices as

26    alleged above.

27    40.    Defendant's insureds have been denied coverage and will continued to be denied

28

6

148034_2

coverage due to Defendant's unlawful claims practices.

41.    There is no adequate remedy at law for defendant's unlawful claims practices.

**WHEREFORE, Plaintiff prays:**

1.    For damages according to proof for breach of contract, including the costs of defense Plaintiff incurred in defending himself in the Third-party Action and the amounts Plaintiff paid to settle that action;

2.    For general and compensatory damages including, injuries resulting from mental anguish and emotional distress according to proof;

3.    For attorneys fees incurred in bringing this action pursuant to California Insurance Code Section 1619;

4.    For attorneys fees incurred in obtaining insurance policy benefits, as provided by law;

5.    For prejudgment interest in an amount to be proven at trial;

6.    For punitive damages in an amount sufficient to deter and make an example of Defendant;

7.    For permanent injunction under the Third Claim for Relief enjoining Defendant from engaging in each of the unlawful claims practices alleged above;

8.    For attorneys fees in bringing the Third Claim for Relief as provided in California Business and Professions Code Section 17200 *et seq*;

9.    For an award of restitution on the Third Claim for Relief to all persons who were injured as a result of the unlawful claims practices alleged above;

10.    For costs of suit incurred herein;

11.    For other and further relief as the Court may deem just and proper; and

///

///

///

///

7

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; INJUNCTIVE RELIEF; AND RESTITUTION

148034_2

1        12.    A jury trial for all claims and causes of action triable by jury including those set

2    forth in any amended complaint or consolidated action.

3                              Respectfully Submitted,

4        Date:  August 3, 2007            RANDICK O'DEA & TOOLIATOS, LLP

5

6                              By:

7                              Patrick E. Guevara

8                              Attorneys for Plaintiff AJMAL AKBAR dba

9                              COMMUNITY ONE FINANCIAL AND
                          REAL ESTATE SERVICES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH
AND FAIR DEALING; INJUNCTIVE RELIEF; AND RESTITUTION

148034_2

EXHIBIT A

# LEXINGTON INSURANCE COMPANY
## WILMINGTON, DELAWARE
Administrative Offices – 100 Summer Street, Boston, MA 02110

## Miscellaneous Professional Liability Insurance Declarations

## THIS IS A CLAIMS MADE AND REPORTED POLICY.  PLEASE READ IT CAREFULLY

**Policy Number:    4685235**                         **Renewal of:    New**

| | | |
|---|---|---|
| **Item 1.** | **Named Insured:** | COMMUNITY ONE FINANCIAL & REAL ESTATE SERVICES |
| | **D/B/A** | COMMUNITY ONE FINANCIAL & REAL ESTATE SERVICES |
| | **Address:** | 39350 CIVIC CENTER DR, STE 300 |
| | | FREMONT, CA  94538 |

**Item 2.        Policy Period:**

**From:    09/07/2005        To:    09/07/2006**
At 12:01 A.M. standard time at the address of the Named Insured stated above.

| | | | | |
|---|---|---|---|---|
| **Item 3.** | **Limits of Liability:** | **a.** | 1,000,000 | **Each Claim** |
| | | **b.** | 1,000,000 | **Aggregate** |
| **Item 4.** | **Deductible:** | **a.** | 2,500 | **Each Claim** |
| | | **b.** | 2,500 | **Aggregate** |
| **Item 5.** | **Premium Amount:** | **a.** | 20,778.00 | **Annual Premium** |
| | | **b.** | 5,194.50 | **Minimum Earned Premium** |

**(It is a condition of this policy, notwithstanding anything in it to the contrary, that if this policy is cancelled by the Named Insured, the Minimum Earned Premium shall be 25 % of the Annual Premium).**

**Item 6.        Professional Services:    Real Estate Sales, Mortgage Brokers, Escrow Services**

**Item 7.        Retroactive Date:        09/07/2004**

**Item 8.        Forms and Endorsements Attached on Inception:
                See attached Forms Schedule.**

By acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any supplements attached hereto are the Insured's representations and that this policy is issued in reliance on them and embodies all agreements between the Insured and the Company or any of its representatives relating to this insurance.

*David Jordan*
_____

Authorized Representative or
Countersignature (in states where Applicable)

CM-MPL (9/99)
LX7161                                         Insured Copy

# MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM

THIS INSURANCE IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS AND ONLY APPLIES TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, A BASIC OR EXTENDED REPORTING PERIOD APPLIES.

THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE EXPENSES INCLUDED WITHIN THE LIMITS OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.

Subject to the applicable limits of liability and all of the terms and conditions of this policy, Lexington Insurance Company (the Company) and the Insured agree as follows:

Words and phrases that are emboldened have special meaning.

I.      **INSURING AGREEMENT.**

The Company will pay on behalf of the **Insured Damages** for which the **Insured** becomes legally obligated to pay because of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Company pursuant to the terms of this policy, within the **Policy Period**, or to the extent applicable, the Basic or Extended Reporting Period. Such **Damages** must arise out of the actual or alleged **Wrongful Act** first committed on or after the **Retroactive Date** stated in Item 7. of the Declarations in the course of the **Insured's** rendering or failing to render **Professional Services** for others.

The Company will have the right and duty to defend any **Claim** made against the **Insured** seeking **Damages** to which this insurance applies, even if any of the allegations of the Claim are groundless, false or fraudulent. The Company may also make such investigation and settlement of any **Claim** it deems appropriate.

The Company will not be obligated to pay **Damages** or **Defense Expenses** or to defend or continue to defend any suit after the applicable Limit of Liability of the Company has been exhausted by payment of **Damages** or **Defense Expenses**, or both.

The Company will pay reasonable expenses incurred by the **Insured** at the Company's request to assist in the investigation of the **Claim** or defense of the suit, including actual loss of earnings up to $100 a day for each **Insured** because of time off from work, subject to a limit of $1,000 for each individual **Insured** for each **Claim**.

II.     **DEFINITIONS.**

A.      **Claim** means a notice received by an **Insured** from a person or entity advising that it is the intention of that person or entity to hold the **Insured** liable for **Damages** for a **Wrongful Act** covered under this policy. **Claim** includes but is not limited to a demand received by an **Insured** for money or services, the service of suit or institution of arbitration proceedings, or a request received by an **Insured** for a tolling agreement with respect to statutes of limitation or for other extensions to allow filing or maintenance of **Claims** against the **Insured**.

Except as otherwise provided in SECTION V – **CONDITIONS**, Paragraph B, **Notice of Claim**, a **Claim** as described in the preceding paragraph, shall be deemed to have been made on either the date that a complaint or similar document is served on the **Insured** or on the date an **Insured** receives a demand, notice or request.

B.   **Damages** mean judgments or settlements negotiated with the approval of the Company; however, **Damages** shall not include:

   (1)   fines, taxes, or penalties;

   (2)   punitive or exemplary damages or the multiplied portion of any multiplied damage award.

C.   **Defense Expenses** means reasonable expenses and legal fees incurred with the approval of the Company in the investigation, adjustment, defense or appeal of a **Claim** against the **Insured**; however, **Defense Expenses** shall not include salaries, overhead or benefit expenses or other fees and charges of the **Insured**.

D.   **Insured** means:

   (1)   the **Named Insured** shown in the Declarations; and

   (2)   any person who was, is now, or hereafter becomes a partner, officer, director, member, manager, or employee of the **Named Insured**, but only while acting on behalf of the **Named Insured** and within the scope of their duties as such; and

   (3)   the estate, heirs, executors, administrators, and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this policy; and

   (4)   any organization the **Named Insured** newly acquires or forms is an insured under this policy but only if, as and when the Company provides the **Named Insured** written acceptance. This provision applies to any partner, officer, director, member, manager or employee of such newly acquired or formed organization, subject to the above described written acceptance in the form of an endorsement issued by the Company to form a part of this policy.

E.   **Policy Period** means the period from the inception date to the expiration date both as stated in Item 2. of the Declarations, or to any earlier effective date of cancellation.

F.   **Retroactive Date** means the date, if specified in Item 7 of the Declarations or in any endorsement attached hereto, on or after which any act, error or omission must have occurred in order for **Claims** arising therefrom to be covered under this policy. **Claims** arising from any act, error or omission occurring prior to this date are not covered by this policy.

G.   **Professional Services** means only those services performed for others for a fee and which are listed in Item 6. of the Declarations.

H.   **Related Claims** means collectively all **Claims** involving the same **Wrongful Act** or **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision.

I.   **Named Insured** means the person or professional corporation listed in Item 1. of the Declarations of this policy

J.   **Wrongful Act** means any actual or alleged act, error, omission or **Personal Injury** offenses committed solely in the performance of, or failure to perform, **Professional Services**.

CM-MPL (9/99)                                                    Page 2 of 12
LX7162

K.   **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time. **Bodily Injury** includes mental anguish and emotion distress.

L.   **Property Damage** means:

(1)   physical injury to tangible property, including all resulting loss of use of that property; or

(2)   loss of use of tangible property that is not physically injured.

M.   **Personal Injury** means injury, other than **Bodily Injury** arising out of one or more of the following offenses:

(1)   false arrest, detention or imprisonment; or

(2)   malicious prosecution; or

(3)   the wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy, of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; or

(4)   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(5)   oral or written publication of material that violates a person's right of privacy.

## III.   EXCLUSIONS

This Policy shall not apply to any **Claim**:

A.   based on or directly or indirectly arising out of or resulting from any criminal, fraudulent, dishonest or discriminatory act or omission or any act, error or omission committed with knowledge of its wrongful nature or with intent to cause damage, or the gaining, by the **Insured** of any personal profit, gain or advantage to which the **Insured** was not legally entitled; however, the Company shall reimburse the **Insured** for any **Defense Expenses** that would have been payable under this policy if, upon final disposition of such **Claim**, such allegations have not been proven;

B.   based upon or arising out of any alleged act, error, omission or circumstance likely to give rise to a **Claim** that an **Insured** had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to any prior **Claim** or possible **Claim** referenced in the **Insured's** application;

C.   based upon or arising out of the actual or alleged theft, stealing, conversion, commingling, embezzlement, or misappropriation by any person of any kind of monies, funds, negotiable instruments, securities, property of any kind, or assets of any kind;

D.   for **Bodily Injury**, or humiliation sustained by any person; but this exclusion will not apply to mental anguish, emotional distress or humiliation caused solely by **Personal Injury**;

E.   for any injury to or destruction of any tangible property, or loss of use resulting therefrom;

CM-MPL (9/99)                                                                              Page 3 of 12
LX7162



F.  arising out of:

    (1)  the promotion, sale or solicitation for sale of securities, real estate or other investments by any **Insured**; or

    (2)  recommendations, representations, or opinions concerning specific investment advice by any **Insured** or any person or organization referred to by any **Insured** in connection with portfolio or trust account management or the performance or non-performance of securities, real estate, or other investments;

G.  by or on behalf of any person or entity included within the definition of **Insured** against any other person or entity included within the definition of **Insured**;

H.  by or against or in connection with any entity other than the **Named Insured** in which an **Insured** or any member of the immediate family of an **Insured** has an ownership interest or control whether such ownership interest or control is financial or otherwise;

I.  arising out of the **Insured's** service and/or capacity as:

    (1)  an officer, director, partner, trustee, principal, stockholder, or employee of any entity other than the **Named Insured**; or

    (2)  a fiduciary under the Employee Retirement Income Security Act of 1974 as amended or any regulation or order issued pursuant thereto; or

    (3)  a public official or employee of a governmental body, subdivision or agency;

J.  arising out of infringement of patent, copyright or trademark;

K.  for the liability of others assumed by the **Insured** under an oral or written contract or agreement, unless such liability would have been attached to the **Insured** even in the absence of such agreement;

L.  based upon the **Insured's** failure to procure or maintain adequate insurance or bonds; any claim arising out of the **Insured's** failure to comply with any law with respect to the **Insured's** employees concerning Workers' Compensation, Employment Insurance, Social Security or Disability Benefits or any similar law;

M.  arising from the breach of any oral or written express warranty;

N.  arising as a counterclaim to any lawsuit any **Insured** may file against a client to collect fees;

O.  arising from any loss of business operating income, or business loss of gross or net income, that is not attributable solely to a **Wrongful Act** committed by an **Insured**;

P.  seeking non-pecuniary relief;

Q.  based upon or arising out of:

    (1)  the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos; or

    (2)  the failure to discover or disclose the existence or amount of **Pollutants** or asbestos; or

CM-MPL (9/99)
LX7162

Page 4 of 12



(3)     any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with A. or B. above; or

(4)     any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **Pollutants** or asbestos; or

(5)     any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants** or asbestos; or

(6)     the manufacture, mining, use, sale, installation, removal, distribution, or exposure to asbestos, asbestos products, asbestos fibers, or asbestos dust.

For the purpose of this exclusion, **Pollutant** means any solid, liquid, gaseous, radioactive or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. **Waste** includes material to be recycled, reconditioned or reclaimed;

R.     arising out of the failure to discover or disclose the presence or existence of a Nuclear Facility, **Nuclear Material, Spent Fuel or Waste**;

For the purpose of this exclusion, the following terms are defined as follows:

(1)     **Nuclear Material** means **Source Material, Special Nuclear Material or By-Product Material.**

(2)     **Source Material, Special Nuclear Material** and **By-Product Material** have the meanings given to them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(3)     Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor.**

(4)     **Waste** means any waste material 1) containing **By-Product Material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content, and 2) resulting from the operation by any person or organization of any **Nuclear Facility** included under the first two paragraphs of the definition of **Nuclear Facility.**

(5)     **Nuclear Facility** means:

a.     any **Nuclear Reactor**; or

b.     any equipment or device designed or used for the 1) separating the isotopes of uranium or plutonium, 2) processing or utilizing **Spent Fuel,** or 3) handling, processing or packaging waste; or

c.     any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of 235; or

 

      d.    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises use for such operations;

      (6)    **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

S.    arising out of any liability, obligation of the **Insured** to indemnify, or any obligation to defend any suit or claim against the **Insured**, for **Property Damage, Bodily Injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish, or mental injury at any time arising out of the manufacture, mining, use, sale, installation, removal, distribution, or exposure to asbestos, asbestos products, asbestos fibers, or asbestos dust.

IV.    **WAIVER OF EXCLUSIONS AND CONDITIONS**

Whenever coverage under any provision of this Policy would be excluded, suspended or lost:

A.    because of any exclusion relating to dishonest, criminal, fraudulent, malicious or intentional **Wrongful Acts** or omissions by an **Insured** and with respect to which any other **Insured** did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof; or

B.    because of non-compliance with any condition relating to giving of notice to the Company with respect to which any other **Insured** shall be in default, solely because of the default or concealment of the default by any other **Insured** responsible for the loss or damage otherwise insured hereunder;

The Company agrees that such insurance as would otherwise be afforded under this policy shall continue in effect with respect to each and every **Insured** who did not personally commit or personally acquiesce in or remain passive after having personal knowledge of one or more acts or omissions described in any such exclusion or condition; provided that if the condition be one with which such **Insured** can comply, after receiving knowledge thereof, the **Insured** entitled to the benefit of this Waiver of Exclusions and Conditions shall comply with such condition promptly after obtaining knowledge of the failure of any other **Insured** or employee to comply therewith.

V.    **CONDITIONS.**

    A.    **Territory.**

        This policy applies only to **Wrongful Acts** committed, and to **Claims** made against the **Insured**, in the United States of America, its territories or possessions, or Canada.

    B.    **Notice of Claim.**

      (1)    As a condition precedent to any right to coverage afforded by this policy, the **Insured** must give written notice to the Company of any **Claim** as soon as practicable after such **Claim** is first made during the **Policy Period** or 30 day Basic Reporting Period or the Extended Reporting Period (if applicable), and as otherwise required by this policy, to:



Attention: Claims Manager,
Lexington Insurance Company
100 Summer Street
Boston, MA 02110

(2)   If the **Insured** becomes aware of any circumstance which may subsequently give rise to a **Claim** against the **Insured** and, during the **Policy Period** or, if applicable, the Basic Reporting Period or the Extended Reporting Period, gives the Company written notice of:

    a.   the nature and date of the specific **Wrongful Act**;

    b.   the names of potential claimants;

    c.   the injury or consequences which have or might result therefrom; and

    d.   the manner in which the **Insured** first became aware of the potential for a **Claim** therefrom, then any **Claim** subsequently made against the Insured arising out of such **Wrongful Act** shall be deemed to have been made during the **Policy Period** or, if applicable, the Basic Reporting Period or the Extended Reporting Period.

**C.   Date of Related Claims.**

**Related Claims** shall be deemed to have been first made at the earliest of the following times:

(1)   at the time the earliest of the **Related Claims** was first made; or

(2)   at the earliest time at which notice was given under any policy of insurance of any act, error, omission, fact, circumstance, situation, transaction, event, or decision underlying any of the **Related Claims.**

**D.   Defense & Settlement of Claims.**

The **Insured** shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company. The Company shall have the right to make investigations and conduct negotiations and, with written consent of the Insured, enter into such settlement of any **Claim** that the Company deems appropriate. If the **Insured** shall refuse to consent to a settlement acceptable to the claimant in accordance with the Company's recommendation, the **Insured** shall thereafter negotiate or defend such **Claim** at the **Insured's** own expense independently of the Company, and, subject to the applicable Limits of Liability of this policy, the Company's liability for such **Claim** shall not exceed the amount for which such **Claim** could have been settled plus **Defense Expenses** incurred with the Company's consent up to the date the **Insured** refused to settle such **Claim.**

**E.   Limits of Liability and Deductibles.**

(1)   Regardless of the number of **Claims**, the number of persons or entities included within the definition of **Insured**, or the number of claimants who make **Claim** against the **Insured**:

    a.   the amount stated in Item 3(a) of the Declarations shall be the maximum Limit of Liability of the Company for all **Damages and Defense**

CM-MPL (9/99)                                                                Page 7 of 12
LX7162

Expenses resulting from each **Claim** or **Related Claims** made against the **Insured**, which amount shall be part of and not in addition to the amount stated in item 3(b) of the Declarations;

b. the amount stated in Item 3(b) of the Declarations shall be the maximum aggregate Limit of Liability of the Company for all **Damages** and **Defense Expenses** resulting from all **Claims** under this policy;

c. the deductible stated in Item 4(a) of the Declarations shall apply separately to each **Claim** or **Related Claims** and shall also apply to either **Damages** or **Defense Expenses**, or both;

d. the deductible stated in Item 4(b) of the Declarations shall be the maximum aggregate deductible that will apply to the **Policy Period** and shall also apply to either **Damages Defense Expenses**, or both.

(2) **Defense Expenses** shall be part of and not in addition to the applicable Limits of Liability, and payment of **Defense Expenses** by the Company shall reduce, and may exhaust, the applicable Limits of Liability.

(3) The obligations of the Company to **pay Damages** and to defend any **Claim** seeking **Damages** from the **Insured** or pay **Defense Expenses** shall be in excess of the deductible, which amount shall be borne by the **Insured** at the **Insured's** own expense. The **Company** shall have no obligation whatsoever, either to the **Insured** or to any other person, or entity, to pay all or any portion of the deductible amount on behalf of the **Insured**. The **Company** shall, however, at its sole discretion, have the right and option to do so, in which event the **Insured** will repay the **Company** any amounts so paid.

(4) The Company shall not be obligated to pay any **Damages** or to defend or continue to defend any **Claim** after the applicable Limit of Liability has been exhausted by the payment of **Damages** or **Defense Expenses**, or both.

F. **Basic Reporting Period.**

(1) If this policy is not renewed for any reason or is cancelled for any reason other than non-payment of premium or deductible, a Basic Reporting Period is automatically provided without additional charge. Coverage is extended to include **Claims** arising out of a **Wrongful Act** which occurred prior to the end of the effective date of such cancellation or non renewal and not before the **Retroactive Date** stated in Item 7. of the Declaration; and are otherwise covered by this policy, provided the **Claim** is first made against the **Insured** during the **Policy Period** and reported to the Company within 30 days after the end of the effective date of such cancellation or non renewal.

(2) The Company's Limits of Liability during the Basic Reporting Period shall be part of, and not in addition to, the Company's Limits of Liability stated in Item 3. of the Declarations.

G. **Extended Reporting Period Endorsement Option**

If the **Named Insured** or the Company cancels or refuses to renew this policy, the **Named Insured** may purchase an Extended Reporting Period Endorsement. It is very important to note that this endorsement to the policy, when issued, extends the period of time during which the **Insured** may report **Claims** to the Company. This option applies only to those **Claims** first made against the **Insured** and reported to the Company during

CM-MPL (9/99)                        Page 8 of 12
LX7162



this extended reporting period. Coverage is extended to include **Claims** arising out of a **Wrongful Act** which occurred prior to the end of the effective date of such cancellation or non renewal and not before the **Retroactive Date** stated in Item 7. of the Declaration; and are otherwise covered by this policy.

If the **Named Insured** wishes to purchase the Extended Reporting Period Endorsement, the following conditions must be met:

(1)    this policy was cancelled or non renewed for reasons other than non-payment of premium or deductible or the failure to cooperate with the Company;

(2)    the **Named Insured** must send written notice of the intention to purchase the option accompanied by the additional premium required. This written notice and premium payment must be received by the Company within thirty (30) days of the end of the **Policy Period**.

(3)    the appropriate additional premium and corresponding extended reporting period shall be:

a.    for 185% of the **Named Insured's** last annual premium stated in Item **7**. of the Declaration, a 3 year extending reporting period;

b.    for 150% of the **Named Insured's** last annual premium stated in Item **7**. of the Declaration, a 2 year extending reporting period;

c.    for 100% of the **Named Insured's** last annual premium stated in Item **7**. of the Declaration, a 1 year extending reporting period;

The Company's Limits of Liability during the Extended Reporting Period shall be part of, and not in addition to, the Company's Limits of Liability stated in Item 3. of the Declarations. The premium for the Extended Reporting Period will be deemed fully earned and cannot be cancelled by either the Company or the **Insured**.

H.    **Other Insurance.**

This policy shall be specifically excess over, and shall not contribute with, any other valid and collectible insurance, whether such other insurance is stated to be primary, contributing, excess (except insurance specifically in excess of this policy), contingent or otherwise.

I.    **Cooperation and Subrogation.**

(1)    In the event of a **Claim**, or after giving the Company notice of circumstances which may subsequently give rise to a **Claim**, the **Insured** will provide the Company with all information, assistance and cooperation as the Company may reasonably request. The **Insured** shall, upon the Company's request, assist in making settlements and the conduct of actions, suits or proceedings. The **Insured** shall attend hearings, trials and depositions and shall assist in securing and giving evidence and obtaining the attendance of witnesses.

(2)    The **Insured** will do nothing that may prejudice the Company's position or the Company's potential or actual rights of recovery in the event of **Claim**.

(3)    In the event of payment under this policy, the Company shall be subrogated to, and entitled to an assignment of all rights of recovery therefor of the **Insured**. The **Insured** shall execute all papers and shall do everything that may be



necessary to secure such rights, including the execution of such documents as may be necessary to enable the Company effectively to pursue and enforce such rights and to bring suit in the name of the **Insured**.

J.    **Cancellation.**

(1)    The Company may cancel this policy by delivering or mailing to the **Insured** by registered, certified or other first class mail written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.

(2)    The **Named Insured** may cancel this policy by surrendering this policy or by mailing or delivering to the Company written notice stating when thereafter such cancellation shall be effective.

(3)    The mailing of notice as aforesaid shall be sufficient proof of notice. If this policy is cancelled by the Company, the earned premium shall be computed pro rata. If this policy is cancelled by the **Named Insured's** written request, the earned premium shall be computed in 90% of pro rata. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(4)    In the event that the Company cancels this policy due to non-payment of premium set forth in Item 5 of the Declarations, the Company may cancel this policy by delivering or mailing to the **Named Insured** by registered, certified or other first class mail written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

K.    **Entire Agreement.**

The **Insured** agrees that this policy, including any endorsements and the application attached to and forming part of this policy, and including any materials submitted in connection with such application, which are on file with the Company and are a part of this policy, as if physically attached, constitutes an agreement existing between the **Insured** and the Company or any of its agents relating to this insurance.

L.    **Representations.**

The **Insured** represents that the particulars and statements contained in the application and all materials submitted in connection therewith are true, accurate and complete, and agrees that this policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are incorporated into and constitute a part of this policy, are the basis of this policy and are material to the Company's acceptance of this risk.

M.    **No Action Against Company; Bankruptcy of Insured.**

(1)    No action shall be taken against the Company unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy and the amount of the obligation of the **Insured** to pay shall have been finally determined either by judgment against the **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the Company.

(2)    No person or entity shall have any right under this policy to join the Company as a party to any **Claim** against the **Insured** to determine the liability of the



Insured, nor shall the Company be impleaded by the **Insured** or the **Insured's** legal representative in any such **Claim**.

(3)    Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

N.    **Authorization and Notices.**

The person or entity stated in Item 1. of the Declarations shall be the sole agent, and shall act on behalf of all **Insureds** with respect to all matters under this policy, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or Cancellation of this policy, the payment of premium and the receipt of any return premiums, and the purchase of any Extended Reporting Period Endorsement.

O.    **Changes.**

Notice to any insurance agent or knowledge possessed by any insurance agent or other person acting on behalf of the Company shall not effect a waiver or change in any part of this policy or stop the Company from asserting any right under its terms, conditions and limitations; nor shall the terms, conditions and limitations of this policy be waived or changed except by written endorsement issued to form a part of this policy.

P.    **No Transfer or Assignment of Insured's Interest.**

No transfer or assignment of interest under this policy or any cause of action against the Company arising out of its performance of, or alleged failure to perform in accordance with the terms and conditions of this policy shall be effective without the Company's written consent; however, in the event of the death, incapacity or bankruptcy of any person or entity within the definition of **Insured**, a **Claim** against the estate, heirs, legal representatives or assigns or the **Insured** for a **Wrongful Act** by such **Insured** shall be considered a **Claim** against the **Insured**.

Q.    **Service of Suit.**

In the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within in the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in court of competent jurisdiction in the United States to remove an action to a United States District court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, MA 02110 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance, and hereby designated the above named Counsel as the person to whom the said office is authorized to mail such process of a true copy thereof.

R.    **Headings.**

The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of this policy.

In Witness Whereof, the Company has caused this policy to be executed by its authorized officers, but this policy shall not be valid unless countersigned on the Declarations page by a duly authorized representative of the Company.

_____
Secretary

_____
President

## FUNGUS MOLD EXCLUSION

This insurance does not apply to any claim, loss, suit, injury, damage, cost or expense, including, but not limited to, losses, cost or expenses related to, arising from, associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    A. Any "fungus(i)", mold(s), mildew or yeast, or

    B. Any "spore(s)" or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

    C. Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

    D. Any material, product, building component, building or structured, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", mold(s), mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

    "Fungus(i)" includes, but is not limited to, any plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

    "Mold(s)" includes, but not limited to, any superficial growth produced on damp or decaying organic matter or on any living organisms, and fungi that produced molds.

    "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

All other terms, conditions and exclusions of this policy remain unchanged.

                         _David Jordan_

                         Authorized Representative or
                Countersignature (in states where Applicable)

MPL022(12/02)

PROFESSIONAL LIABILITY

This Endorsement amends the policy. Please read it carefully.

## Real Estate Operations Amendatory Endorsement

In consideration of the premium charged, it is understood and agreed that the **EXCLUSIONS** are amended by adding the following:

1.  any claim arising out of any notarized certification or acknowledgment by an Insured of a signature without the physical appearance at the time of notarization of the person who is or claims to be the person signing the document;

2.  any claim arising out of or connected with any transaction in which any Insured has a direct or indirect beneficial ownership interest as a buyer or seller of real property; however, this exclusion does not apply to real property to which any Insured has taken legal title solely for the immediate resale and has entered into a written contract to sell not later than 120 days after taking legal title;

3.  any claim arising out of or connected with the formulation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein;

4.  any claim arising out of the actual or alleged commingling of or inability or failure to pay, collect, disburse or safeguard any funds held by any Insured, including, but not limited to, any such conduct with respect to real estate sales or brokerage activities, property management activities, escrow or tax activities or insurance placements;

5.  any claim arising of out any property management services where the Insured's ownership interest of said properties exceeds 10%;

6.  any claim arising out of the auction, sale or management of real property that is developed or built by any Insured;

7.  any claim arising out of the failure to effect or maintain adequate levels or types of insurance.

8.  any claim for any appraisal in which any insured's compensation is determined by the valuation of the real property appraised.

All other terms, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in states where Applicable)

LX9324 (9/99)

Page 1 of 1

PROFESSIONAL LIABILITY

# ENDORSEMENT

This endorsement, effective 12:01 AM    09/07/2005

Forms a part of policy No.:    4685235

Issued to:    COMMUNITY ONE FINANCIAL & REAL ESTATE SERVICES    COMMUNITY ONE FINANCIAL &
             REAL ESTATE SERVICES
By:    Lexington Insurance Company

**This Endorsement amends the policy.  Please read it carefully.**

## Discrimination Endorsement – Defense Costs Only

In consideration of the premium charged, it is understood and agreed that the Company will reimburse the Insured up to a maximum of, 50,000                    for all claims expenses incurred by the Insured in defense of civil lawsuits made and reported during this policy period alleging violations of Title VIII of the Civil Rights Act of 1968 or any similar state or local law or ordinance.

The Company's obligation to reimburse the Insured for such claim expenses does not include any other amounts for which the Insured becomes legally obligated to pay as a result of a wrongful act, by any Insured or by any entity for whom the Insured is legally liable, alleging violation of Title VIII of the Civil Rights of 1968 or any similar state or local or ordinance.

The Company further agrees with its obligation to reimburse such claim expenses is in excess of the Insured's applicable deductible.

All other terms, conditions and exclusions of this policy remain unchanged.

_David Jordan_

Authorized Representative or
Countersignature (in states where Applicable)

LX9297 (9/99)                                                                                    Page 1 of 1

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of the Insured's employees and/or Discrimination involving Insured's employee's and/or Sexual Harassment of the Insured's employees.

The following definitions apply to the following:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or national origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

All other terms, conditions and exclusions of this policy remain unchanged.

*David Jordan*
_____

**Authorized Representative or
Countersignature (in states where Applicable)**

LX9346 (9/99)

PROFESSIONAL LIABILITY

**This Endorsement amends the policy. Please read it carefully.**

## Escrow Agents Amendatory Endorsement

In consideration of the premium charged, it is understood and agreed that the **EXCLUSIONS** are amended by adding the following:

1. any claim arising out of any release of funds without receipt of:

   a. a certificate of occupancy from the appropriate governmental agency; or
   b a certificate of completion from an architect; or
   c. appropriate waivers or releases of liens from any contractor, subcontractor, or materials or service provider;

2. any claim arising out of faulty workmanship, defective materials or a breach of contract by a construction contractor or subcontractor;

3. any claim arising out of any opinion of title rendered by an Insured;

4. any claim arising out of any ownership interest in any property held by an Insured;

5. any claim based upon or arising out of any notarized of a signature without the physical appearance of the signator before the Insured.

All other terms, conditions and exclusions of this policy remain unchanged.

*David Jordan*
_____

**Authorized Representative or
Countersignature (in states where Applicable)**

This endorsement, effective 12:01 A. M.          09/07/2005          forms part of Policy

No.   4685235               issued to     COMMUNITY ONE          by   LEXINGTON INSURANCE
                                          FINANCIAL & REAL             COMPANY
                                          ESTATE SERVICES
                                          COMMUNITY ONE
                                          FINANCIAL & REAL
                                          ESTATE SERVICES


## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### TERRORISM EXCLUSION

*This endorsement modifies insurance provided under the following:*


This insurance does not apply to loss arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

The following **Section 102** definition of "act of terrorism" from the **Terrorism Risk Insurance Act of 2002** applies:

(1) Act of Terrorism -
  (A) Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States -
    (i)  to be an act of terrorism;
    (ii) to be a violent act or an act that is dangerous to -
      (I)   human life;
      (II)  property; or
      (III) infrastructure;
    (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
      (I)  an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];
      (II) the premises of a United States mission; and
    (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
  (B) Limitation. - No act shall be certified by the Secretary as an act of terrorism if -
    (i)  the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or


81127 (11/02)                              Page 1 of 2



(ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C) Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

All other terms, conditions and exclusions of this policy remain unchanged.

_David Jordan_

**Authorized Representative or
Countersignature (in states where Applicable)**

81127 (11/02)                                    Page 2 of 2

EXHIBIT B

Received:      Sep 26 2006 1:??pm

1   Dan C. Bolton (Bar No. 104236)
    LAW OFFICES OF DAN C. BOLTON
2   1280 Grand View Drive                          ENDORSED
    Berkeley, CA 94705                               FILED
3   Telephone: 510.704.1282                      ALAMEDA COUNTY
4   Fax: 510.704.1281
                                                    JUN 28 2006
5   Attorneys for Plaintiff
    MARICELA GUTIERREZ                    CLERK OF THE SUPERIOR COURT
6                                         By _____
                                                             Deputy
7
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
                          COUNTY OF ALAMEDA
9

10
    MARICELA GUTIERREZ,             )  Case No.   RG06276752
11                                  )
12              Plaintiff,          )
                                    )  PLAINTIFF'S COMPLAINT FOR
13  v.                              )  DAMAGES, RESTITUTION AND
                                    )  INJUNCTIVE RELIEF
14                                  )
    AJMAL AKBAR, an individual dba  )
15  COMMUNITY ONE FINANCIAL AND     )
16  REAL ESTATE SERVICES, OWNIT     )
    MORTGAGE SOLUTIONS, INC., YAMA  )
17  MARIFAT, Does 1 through 10,     )
                                    )
18                                  )
              Defendants.           )
19  _____)

20

21                      FIRST CAUSE OF ACTION
22                       (Unfair Business Practices
              California Bus. & Prof. Code Sect. 17200 et seq.)
23
        1. Plaintiff, Maricela Gutierrez, is an individual, and is now, and at all times mentioned in
24
    this Complaint was, a resident of Alameda County, State of California.
25
        2.  On information and belief, and at all times mentioned in this Complaint, Defendant
26
    AJMAL AKBAR, an individual, is and was a licensed real estate broker with the California
27
    Department of Real Estate, and was the principal and owner of, and doing business as,
28
    COMMUNITY ONE FINANCIAL AND REAL ESTATE SERVICES, in Alameda County, State
                                         1
    PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND
    INJUNCTIVE RELIEF

Received:                                    Sep 26 2006  09pm

1    of California.   On information and belief, defendant AJMAL AKBAR, in his capacity as a

2    principal of COMMUNITY ONE FINANCIAL AND REAL ESTATE SERVICES, authorized,

3    ratified, and/or participated in the brokering of the loan that is the subject of this action.

4        3.  Defendant, OWNIT MORTGAGE SOLUTIONS, INC., is a corporation, and is now,

5    and at all times mentioned in this Complaint was, organized under the laws of California and doing

6    business in Alameda County, State of California.   Defendant Ownit Mortgage Solutions, Inc.

7    authorized, ratified, and/or participated in the brokering and origination of the loan note, secured by

8    a deed of trust for the plaintiff's residence, which is the subject of this action.

9        4.  Defendant YAMA MARIFAT, an individual, at all times mentioned in this Complaint,

10    was a licensed real estate salesperson with the California Department of Real Estate, and as an

11    agent and employee of Ajmal Akbar, an individual doing business as Community One Financial

12    and Real Estate Services, participated in the brokering of the mortgage loan which is the subject of

13    this action.

14        5.  Plaintiff does not know the true names of defendants Does One through Ten, inclusive,

15    and therefore sues the defendants by those fictitious names.   Each of the defendants was

16    responsible in some manner for the occurrences alleged in this Complaint, and plaintiff's damages

17    were proximately caused by these defendants.

18        6.  At all times mentioned in this Complaint, each of the defendants was the agent, servant,

19    partner and/or joint venturer of each of the remaining defendants, and was at all times acting within

20    the purpose and scope of the agency, service, employment, partnership and/or joint venture.

21        7.  Plaintiff is a Spanish speaking individual who was contacted by telephone in April 2005,

22    by a Spanish speaking representative of defendant Ajmal Akbar, an individual dba Community

23    One Financial and Real Estate Services, and offered brokering services for a loan to refinance

24    plaintiff's residence at 31463 Carroll Avenue, Hayward, California.   In May and June 2005,

25    Plaintiff had several meetings with defendant Yama Marifat and a Spanish speaking translator.

26        8.  Although Plaintiff signed the mortgage loan documents on June 30, 2005, defendants

27    backdated the loan documents, including the Notice of Right to Cancel under the Truth in Lending

28

2

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF

Received:        Sep 26 2006 TI...pm

1   Act (15 U.S.C. Section 1601 *et seq.*) to June 28, 2005, in order to prevent plaintiff from exercising

2   her three day right to cancel the transaction, pursuant to 15 U.S.C. Sect. 1635(a).

3       9.   Plaintiff is informed and believes, and on that basis alleges, that defendants have

4   engaged in, and continue to engage in, numerous acts and/or a pattern and practice of unfair

5   competition within California in violation of Business and Professions Code section 17200 *et seq.*

6   These unfair business practices include without limitation the following:

7           a.  Engaging in predatory lending practices in dealings with plaintiff;

8           b.  Failing to provide notices and disclosures required by the Truth in Lending Act;

9           c.  Discriminating on the basis of gender, race, color and/or national origin;

10          d.  Violating the Truth in Lending Act, 15 U.S.C. Sect. 1601 *et seq.*, the Unruh Civil

11  Rights Act, California Civil Code Sect. 51 *et seq.*, the Fair Employment and Housing Act,

12  California Government Code Sect. 12900 *et seq.*, the Consumers Legal Remedies Act, California

13  Civil Code Sect. 1750 *et seq.*, the False Advertising Act, California Business and Professions Code

14  section 17500 *et seq.*, and California Civil Code section 1632.

15      10.  The above-described unlawful, unfair and fraudulent business practices present an

16  ongoing threat of injury to plaintiff. Plaintiff has been, and continues to be, financially harmed by

17  such conduct and, unless restrained, defendants will continue to engage in such conduct.

18      11.  Defendants' conduct has caused plaintiff to suffer the encumbrance of her residence,

19  resulting in substantial threat to, or actual loss of, title to her residence.

20      12.  Plaintiff seeks injunctive relief enjoining defendants from engaging in the unfair

21  business practices described in this Complaint.

22      13.  Injunctive relief is proper since plaintiff has no adequate remedy at law. Monetary

23  damages will not compel defendants to cease to engage in the unfair business practices described in

24  this Complaint.

25      14.  Defendants have been unjustly enriched at the expense of plaintiff who therefore is

26  entitled to equitable restitution and disgorgement of profits realized by defendants.

27      15.  Plaintiff seeks an award of attorney's fees, pursuant to Code of Civil Procedure section

28  1021.5.

3

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF

Received:                     Sep 26 2006  12:09pm

1
2

## SECOND CAUSE OF ACTION
### (California Fair Employment and Housing Act
### Cal. Govt. Code Sect. 12900, *et seq.*)

3      16.  Plaintiff incorporates by reference the allegations contained in all paragraphs above, as
4   if fully set forth herein.

5      17.  Defendants are financial institutions that provide financial assistance for the purchase
6   of housing within the meaning of California Government Code section 12955(e).

7      18.  Plaintiff is a female, racial minority and/or person of foreign national origin who
8   entered loan transactions with defendants.

9      19.  Plaintiff is informed and believes, and on that basis alleges, that defendants engaged in
10  a willful and malicious pattern and practice of discrimination against plaintiff on the basis of her
11  gender, race and/or national origin in the terms or conditions of the loan contracts entered into
12  between plaintiff and defendants.  Specifically, the terms and conditions offered to plaintiff were
13  less favorable than those offered by defendants to borrowers not better qualified than plaintiff but
14  of different gender, race and/or national origin.

15     20.  By the actions described herein and as a proximate cause of defendants' conduct,
16  plaintiffs have been damaged, as set forth herein.  Plaintiff is entitled to an order of this Court
17  enjoining defendants from continuing to engage in such discriminatory conduct.  Plaintiff will be
18  irreparably harmed if such an order is not granted.

19     21.  Defendants have been unjustly enriched at the expense of plaintiff who therefore is
20  entitled to equitable restitution and disgorgement of profits realized by defendants.

21     22.  The acts of defendants as described herein were willful, wanton and in conscious
22  disregard of plaintiff's rights.  Plaintiff therefore is entitled to recover punitive damages in an
23  amount according to proof.

24

## THIRD CAUSE OF ACTION
### (California Unruh Civil Rights Act
### California Civil Code Sect. 51, *et seq.*)

25
26     23.  Plaintiff incorporates by reference the allegations contained in all paragraphs above, as
27  if fully set forth herein.

28

4

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF

Received:  Sep 26 2006 12:03pm

24. Plaintiff is informed and believes, and on that basis alleges, that defendants engaged in a willful and malicious pattern and practice of discrimination against plaintiff on the basis of her gender, race and/or national origin in the terms or conditions of the loan contracts entered into between plaintiff and defendants. Specifically, the terms and conditions offered to plaintiff were less favorable than those offered by defendants to borrowers not better qualified than plaintiff but of different gender, race and/or national origin.

25. By the actions described herein and as a proximate cause of defendants' conduct, plaintiffs have been damaged, as set forth herein. Plaintiff is entitled to an order of this Court enjoining defendants from continuing to engage in such discriminatory conduct. Plaintiff will be irreparably harmed if such an order is not granted.

26. Defendants have been unjustly enriched at the expense of plaintiff who therefore is entitled to equitable restitution and disgorgement of profits realized by defendants.

## FOURTH CAUSE OF ACTION
### (California Civil Code Sect. 1632)

27. Plaintiff incorporates by reference the allegations contained in all paragraphs above, as if fully set forth herein.

28. Defendants violated California Civil Code section 1632, when its brokers and agents conducted the mortgage loan transactions in Spanish, and failed to provide a Spanish language translation of the mortgage loan contracts to plaintiff.

29. By failing to provide any of the loan documents in Spanish after all of the negotiations were conducted in Spanish, defendants have violated Civil Code section 1632.

30. By the actions described herein and as a proximate result of defendants' conduct, plaintiffs are entitled to rescind the loan transaction and to restitution, and any other damages.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty as to Defendants
### Ajmal Akbar dba Community One Financial and Real Estate Services
### and Alma Marifat)

31. Plaintiff incorporates by reference the allegations contained in all paragraphs above, as if fully set forth herein.

5

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

Received:                     Sep 26 2006  ⬤ 09pm

32. At all times relevant, defendants Ajmal Akbar, dba Community One Financial and Real Estate Services and Alma Marifat, served as the mortgage brokers for the plaintiff, and at all times presented themselves as licensed real estate agents and/or loan brokers to the plaintiff.

33. Because of their role as plaintiff's mortgage broker, these defendants were in a fiduciary relationship with the plaintiff at all times relevant to this Complaint.

34. As part of their fiduciary duty to the plaintiff, these defendants, and each of them, owed the plaintiff the highest duty of good faith and fair dealing, honesty, and truthfulness.

35. By their conduct, as well as by and through the conduct of their agents and employees, these defendants breached their fiduciary duty to plaintiffs.

36. The conduct of defendants as alleged herein constituted unconscionable, illegal and fraudulent mortgage brokering, credit and lending practices and dishonest dealings in violation of California law and the Truth in Lending Act.

37. The above described conduct of defendants was done maliciously, fraudulently and oppressively, and with the wrongful intention of injuring plaintiff, and defendants acted in conscious and willful disregard of plaintiff's rights. The acts described herein were carried out by management employees and other agents, and such conduct was ratified by defendants. Plaintiff therefore requests that the trier of fact award plaintiff punitive damages for the above described conduct.

38. By the actions described herein and as a proximate cause of the defendants' conduct, plaintiff suffered severe emotional distress, and physical and mental pain, and other general and special damages according to proof.

## SIXTH CAUSE OFACTION
### (Truth in Lending Act 15 U.S.C. Sect. 1601 *et seq.* and Federal Reserve Regulation Z, 12 C.F.R. Sect. 226.1 *et seq.*)
### As to Defendants Ajmal Akbar dba Community One Financial and Real Estate Services and Ownit Mortgage Solutions, Inc.)

39. Plaintiff incorporates by reference the allegations contained in all paragraphs above, as if fully set forth herein.

40. Defendants are creditors within the meaning of the Truth in Lending Act as implemented by Regulation Z.

6

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

 

Received:                                    Sep 26 2006   12:09pm

41.  Defendants violated the Act and Regulation Z by failing to provide plaintiff with a notice of right to cancel that was clear, conspicuous, truthful and reflective of the parties' legal obligations, and by backdating the notice of right to cancel.

42.  All statutes of limitations relating to disclosures and notices required under 15 U.S.C. sect. 1601 *et seq.* are tolled because of defendant's failure to effectively provide the disclosures and notices.

43.  As a direct and proximate result of these violations, plaintiff was, and continues to be, damaged in an amount according to proof, including, but not limited to, statutory damages, including twice the amount of the finance charge in connection with the loan transaction.

44.  The acts of defendants as described herein were willful, wanton, and in conscious disregard of plaintiff's rights.  Plaintiff is therefore entitled to recover punitive damages in an amount according to proof.

## SEVENTH CAUSE OF ACTION
### (Fraud and Misrepresentation)

45.  Plaintiff incorporates by reference the allegations contained in all paragraphs above, as if fully set forth herein.

46.  At all times relevant, starting in April 2005, and continuing thereafter, defendants suppressed and concealed from plaintiff material and key information regarding the mortgage loan, including, but not limited to, the nature and type of the loans, the loan interest rates, the amount of plaintiff's monthly payments, the nature and existence of pre-payment penalties, her right to cancel the transaction, and her right to receive a copy of the loan documents in Spanish.

47.  The true facts of the mortgage loan are wholly different and inconsistent with the loan terms that defendants had verbally represented to plaintiff in Spanish as the terms and conditions of her loan documents.

48.  This fraud and misrepresentation includes, but is not limited to, the following:  interest rates, monthly payments and other terms and conditions which were neither disclosed nor fully and properly explained by defendants to plaintiff before she signed her loan documents, which were all written entirely in English.  Plaintiff signed the loan documents on June 30, 2006.

7

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF



Received:                        Sep 26 2006 12:00pm

1     49. By the actions described herein and as a proximate cause of defendants' conduct,

2  plaintiffs have been damaged, as set forth above.

3
                 **EIGHTH CAUSE OF ACTION**
4                      **(Negligence)**

5     50. Plaintiff incorporates by reference the allegations contained in all paragraphs above, as

6  if fully set forth herein.

7     51. Defendants had a duty to act reasonably and prudently as mortgage brokers, mortgage

8  lenders and financial lenders in their communications and dealings with plaintiff.

9     52. Defendants breached their duty to plaintiff by the actions described in this Complaint.

10    53. By the actions described in this Complaint and as a proximate cause of the defendants'

11 negligent conduct, plaintiff suffered injuries and damages as herein alleged.

12
                 **NINTH CAUSE OF ACTION**
13                   **(False Advertising Act**
14    **California Business and Professions Code sect. 17500 et seq.)**

15    54. Plaintiff incorporates by reference the allegations contained in all paragraphs above, as

16 if fully set forth herein.

17    55. The advertising, promotional materials and other written and oral promotional efforts

18 undertaken by defendants to induce plaintiff to enter into the loan transaction which is the subject

19 of this Complaint were deceptive, untrue and/or misleading, or omitted material information, and

20 which were known, or by the exercise of reasonable care should have been known, by defendants

21 to be deceptive, untrue and/or misleading, in violation of California Business and Professions Code

22 section 17500 et seq.

23    56. Defendants' use of various forms of advertising media to advertise, call attention to or

24 give publicity to the sale of services and other practices, as set forth above, which were not as

25 advertised or as otherwise represented, constituted unfair competition, deceptive, untrue and/or

26 misleading advertising, and unlawful business practices within the meaning of the statute.

27

28

                             8

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF

 Received:

 Sep 26 2006  12:09pm

57. Pursuant to California Business and Professions Code section 17535, plaintiff seeks an order of this Court enjoining defendants from continuing to engage in their false advertising practices. Plaintiff will be irreparably harmed if such an order is not granted.

58. Defendants have been unjustly enriched at the expense of plaintiff, who is entitled to equitable restitution and disgorgement of profits realized by defendants as a result of their unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

### TENTH CAUSE OF ACTION
#### (Consumer Legal Remedies Act California Civil Code Sect. 1750 et seq.)

59. Plaintiff incorporates by reference the allegations contained in all paragraphs above, as if fully set forth herein.

60. By their wrongful conduct as alleged herein, Defendants willfully and maliciously created, engaged in and/or participated in unfair acts or practices in violation of the Consumer Legal Remedies Act.

61. As a proximate result of defendants' unfair or deceptive acts or practices, plaintiff suffered, and continues to suffer, damages as herein alleged in an amount according to proof.

62. Defendants have been unjustly enriched at the expense of plaintiff, who is therefore entitled to equitable restitution and disgorgement of profits realized by defendants as a result of their violations of the Act.

63. Pursuant to section 1780, plaintiff is entitled to an order of this Court enjoining defendants from engaging in their unfair methods of competition or unfair or deceptive acts or practices.

64. The acts of defendants as described herein were willful, wanton, and in conscious disregard of plaintiff's rights. Plaintiff is therefore entitled to recover punitive damages in an amount according to proof.

WHEREFORE, plaintiff prays for the following relief:

1. The Court enjoin all unlawful practices complained of herein and impose affirmative injunctive relief as necessary;

9

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

Received:  Sep 26 2006 12:40pm

1    2. The Court further enjoin all unlawful practices complained about herein and impose

2    affirmative injunctive relief prohibiting defendants, their partners, agents, employees, assignees,

3    and all persons acting in concert or participating with them from discriminating in the terms and

4    conditions of providing fair and equal access to credit;

5    3. The Court award restitution, disgorgement of profits, and actual, compensatory and

6    punitive damages according to proof;

7    4. The Court award all statutory damages, including up to three times the amount of actual

8    damages to plaintiff pursuant to the Unruh Civil Rights Act, and twice the amount of the finance

9    charge in connection with the loan transaction pursuant to the Truth in Lending Act;

10   5. The Court award reasonable attorney's fees;

11   6. The Court award costs of suit; and

12   7. The Court grant all such other relief as it deems just and proper.

13

14   Date: June 28, 2006                    LAW OFFICES OF DAN C. BOLTON

15

16

17

18                                          By:  Dan C. Bolton
19                                          Attorneys for Plaintiff
20                                          MARICELA GUTIERREZ

21

22

23

24

25

26

27

28

**10**

PLAINTIFF'S COMPLAINT FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF